SANDY SUPPLY COMPANY ET AL., APPELLEES, *v.* SUPERIOR PETROLEUM, INC. ET AL., APPELLANTS.

(No. 2259—Decided
October 28, 1987.)

*Daniel H. Plumly* and *Peggy J. Schmitz,* for appellees.
*Thomas N. Julius* and *David P. Bertsch,* for appellants.

GEORGE, J. Plaintiffs-appellees, the Sandy Supply Company ("Sandy Supply") and the Wooster Tool & Supply Company ("Wooster Tool"), are in the business of furnishing supplies used in the gas and oil industry. Most of the defendants-appellants own various interests in three gas and oil wells known as Mercer #1, Mercer #2, and Traficant #1. Defendant-appellant Superior Petroleum, Inc. ("Superior"), served as agent for these owners, in the drilling, completion, operation and repair of the three wells. The remaining defendants-appellants are purchasers of the gas and oil from these wells.

Pursuant to an agreement and an ongoing business relationship between the two appellees and Superior, Superior was permitted to purchase supplies, as needed, on an open, running, and continuous account with each of the appellees. Between September 15, 1981, and January 16, 1982, Sandy Supply provided $55,817.02 worth of materials to Superior for the Mercer #1 well. Between September 23, 1981 and January 16, 1982, Sandy Supply provided $47,898.45 worth of materials to Superior for Mercer #2. Sandy Supply also provided $64,931.69 worth of materials to Superior for Traficant #1, between May 28, 1981 and January 28, 1982. In addition, Wooster Tool provided $5,539.83 worth of materials to Superior for Mercer #1 between

September 25, 1981 and January 15, 1982. Each of the invoices for these several purchases contain a designation of the well for which the ordered supplies were needed and for which the supplies would be used. Virtually all of the ordered items were delivered to their respective well sites.

When no payments were received for the materials supplied to Superior for the wells, Sandy Supply filed and perfected mechanic's liens against Mercer #1 and #2 on May 11, 1982, and against Traficant #1 on May 28, 1982. Wooster Tool also filed and perfected a mechanic's lien against Mercer #1 on February 5, 1982. These several liens were filed pursuant to R.C. 1311.021. Thereafter, Sandy Supply and Wooster Tool commenced an action to foreclose on the mechanic's liens within the statutory time period.

A two-day trial was held and the trial court found that Sandy Supply's mechanic's liens against Mercer #1 and Mercer #2 were valid for the full amount of the value of the supplies provided for the two wells. Sandy Supply's mechanic's lien against Traficant #1 was found valid only for the value of the most recent invoice of $73, since the remaining invoices were sufficiently distant in time to require their exclusion. Wooster Tool's mechanic's lien against Mercer #1 was also found to be valid for the full amount of the value of the supplies provided for that particular well.

Appellants raise four assignments of error on appeal. This court affirms.

### Assignment of Error I

"The trial court erred as a matter of law in allowing mechanic's liens covering sales of materials to the contractor more than 120 days prior to the filing of the liens."

In their first assignment of error, the appellants assert that the majority of the sales were made more than one

hundred twenty days prior to the filing of the mechanic's liens, and therefore should not have been included in the liens. Appellants contend that once construction was completed, the materials supplied for the construction of the wells could not properly be included with the materials supplied for later repairs. The issue presented is whether the facts here show a separation of purpose for which the materials were supplied, *i.e.,* those supplied for use in construction from those supplied for use in repair.

R.C. 1311.021 provides a lien on oil and gas wells to secure payment for either a person who furnishes materials for "digging, drilling, boring, operating, completing or repairing of any well * * * by virtue of a contract, expressed or implied, with the owner * * * or his authorized agent," or for a person who furnishes materials to a contractor "in carrying forward, performing or completing the contract." The lien permitted by this statute affects the lease or leasehold, the oil or gas produced from the well, the proceeds of that gas or oil, and the machinery, equipment, materials and supplies on or used in the wells. R.C. 1311.021. R.C. 1311.06(B)(2) requires that for a person to avail himself of the lien permitted under R.C. 1311.021, he must file an affidavit for the lien within one hundred twenty days from the date on which the last materials were furnished. The time period for filing the affidavit cannot be extended by the furnishing of materials for a purpose other than that originally contracted for. *Choteau* v. *Thompson & Campbell* (1853), 2 Ohio St. 114, 125.

The trial court determined that there was an implied contract to supply materials for the construction of the three wells in question between the appellees and Superior, which was acting as agent for the leaseholding defendants-appellants. The trial court further found that the liens filed were sufficient to include all of appellees' invoices except those disallowed in Sandy Supply's lien on Traficant #1. The disallowed invoices were found to be so distant in time from the most recent invoice as to not be part of the same contract.

Here, the evidence is in dispute as to whether the materials supplied within the one-hundred-twenty-day period were for the completion of the construction of the wells, or were for subsequent repairs. The appellants assert that the wells were completed in October 1981, and that the materials ordered in January 1982 were for the repair of the wells damaged by a fire. However, Superior's own representative testified that the fire may have actually occurred after the last supplies for the Mercer #1 and Mercer #2 wells were ordered. Additionally, there was evidence presented to indicate that although the wells may have initially begun production sometime in October 1981, additional supplies could be needed before the wells were put into full production. In fact, a number of the invoices applicable to the wells were made subsequent to the dates the appellants assert the wells were completed.

The trial court, as factfinder, was required to determine whether the evidence supported one or more purposes. The evidence presented was sufficient to support the trial court's finding that the materials supplied within the one-hundred-twenty-day period were part of a continuing contract for the construction of the wells. A factual finding, supported by competent evidence, will not be disturbed upon appeal. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. Accordingly, appellants' first assignment of error is overruled.

## Assignment of Error II

"The trial court erred as a matter of law in allowing mechanic's liens covering general sales of materials to a contractor where there was no agreement, requirement or understanding as to the contractor's use of the materials."

Appellants assert that the appellees were not entitled to any lien on the wells because there was no agreement or understanding between the parties as to Superior's use of the materials ordered. Appellants contend that there was no express agreement, nor had the appellees ever inquired into the identity of Superior's customers or the purpose of the purchases. As further support for their argument that no understanding between the parties existed, appellants direct this court's attention to the fact that the appellees did not keep separate accounts on any of Superior's projects but rather simply kept a single open and running account.

Initially, the fact that the appellees charged Superior for the materials on an open account does not preclude any right they have to attach and foreclose on a lien. *Seybold* v. *Pitz* (1955), 101 Ohio App. 316, 1 O.O. 2d 272, 136 N.E. 2d 666, paragraph four of the syllabus. Additionally, an express agreement as to the particular purpose for which the materials are needed is not necessary; it may also be shown by proof of circumstances from which the purpose may be inferred. *Choteau, supra*, at 125.

Here, there is sufficient evidence to show that the parties understood that the materials furnished by the appellees were to be used in the construction of the wells in question. As a matter of procedure, Superior routinely supplied the name of the well to be invoiced for each order. Whenever Superior failed to supply the name, the appellees would request the name of the well to be invoiced. When a materialman furnishes suitable materials to a company he knows is erecting a structure, the law presumes that the materials are furnished for that structure and are so accepted by the purchaser, and likewise it will presume that the materialman intends to retain the right the law gives him to attach a lien for the materials purchased. *Kunkle* v. *Reeser* (P.C. 1898), 5 Ohio N.P. 401. Accordingly, there is sufficient evidence of an understanding that the items were furnished for the construction of the three wells, and thus a contract is implied. Appellants' second assignment of error is overruled.

## Assignment of Error III

"The trial court erred as a matter of law in allowing mechanic's liens on sales of materials where the suppliers subsequently received payments from the contractor in an amount sufficient to cover the sales, which were instead applied to the general account balance."

In their third assignment of error, appellants claim that the appellees are not entitled to the mechanic's liens because they failed to prove the amount due them. Appellants assert that this failure occurred because the appellees failed to credit any specific accounts with the payments made to them by Superior.

Here, Superior had received payment in full from the other appellants for the construction of the wells. These payments were, in turn, made by Superior to the appellees for supplies furnished on the open account. Superior had the right to direct the debt to which the payments were to be applied. *Reliance Universal, Inc.* v. *Deluth Constr. Co.* (1981), 67 Ohio St. 2d 56, 64, 21 O.O. 3d 36, 41, 425 N.E. 2d 404, 409. However, Superior failed to exercise this right. In the absence of

a designation, the appellees had the right to credit the payments in their sole discretion. *Builders Supply & Fuel Co.* v. *King* (App. 1931), 10 Ohio Law Abs. 724. In this case, the appellees chose to apply the payments to what they called an unapplied cash account. It remained there awaiting Superior's designation, which never came. Additionally, there was no evidence that the appellees should have known that the payments were to be applied to the specific well accounts.

The failure of the appellees to credit the payments to any specific invoice does not affect the appellees' ability to attach and foreclose on the mechanic's liens. The appellees proved the amount due them by the introduction of the invoices and the amounts specified therein. Superior could have readily minimized or eliminated the debts on the three well accounts by simply indicating to which invoices the payments were to apply. This it failed to do. Accordingly, appellant's third assignment of error is overruled.

### Assignment of Error IV

"The trial court erred as a matter of law in allowing mechanic's liens where the suppliers failed to establish that the materials were actually delivered or used at the construction site."

Appellants also assert that the mechanic's liens should not have been allowed since the appellees could not demonstrate that the materials were actually delivered or used at the wells in question. However, Superior's own representative testified that the appellees made sure that the items were delivered to the well sites for which they were ordered. Superior's representative further testified that the materials used in the wells were supplied exclusively by the appellees, and even went so far as to testify that the specific items invoiced were in fact used in the wells for which they were ordered. Accordingly, appellants' fourth assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and BAIRD, J., concur.