Marshall, C. J.
 

 No objection is made to the manner and form of obtaining the lien. We are concerned only with the interpretation of the mechanic’s lien statutes, their validity, and their application to the agreed statement of facts.
 

 Our first inquiry must relate to the question of con
 
 *325
 
 stitutionality. This question was first raised in an unusual way by the Theatre Company pleading in the third defense of its answer that any construction of the Ohio statute which would establish a lien would render the statute invalid as a restraint upon the liberty of contract, as impairing the obligation of the contract, and as a taking of property without due process of law.
 

 The statute cannot violate the Ohio Constitution, because Section 33 of Article II, as adopted in 1912, provides:
 

 “Laws may be passed to secure to mechanics, artisans, laborers, sub-contractors and material men, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the constitution shall impair or limit this power.”
 

 This constitutional provision was doubtless prompted by the decision of this court in
 
 Palmer & Crawford
 
 v.
 
 Tingle,
 
 55 Ohio St., 423, 45 N. E., 313, which held a law of 1894 unconstitutional because it gave to the subcontractors, laborers, and material-men a direct lien upon the property of the owner. This court in the decision referred to declared that law, Section 3184, Revised Statutes, to be an unreasonable restraint upon the liberty of contract. The same statute, however, was involved in a case heard by the United States Circuit Court of Appeals of the Sixth Circuit,
 
 Jones
 
 v.
 
 Great Southern Fireproof Hotel Co.,
 
 86 F., 370. That case was heard before Taft and Lurton, Circuit Judges, and Clark, District Judge, two of whom afterwards occupied a seat on the Supreme Bench, and the court reached the conclusion that the statute did not violate the
 
 *326
 
 liberty of contract, and, while recognizing the right of the state court to pass upon the validity of its own statutes as measured by its own Constitution, where only its own citizens were involved, denied the right of the Ohio Supreme Court to measure the constitutional validity of the statute by any other than a local standard. From page 385 of the opinion we quote:
 

 “But the validity of such statutes need not be rested upon mere authority. They find sanction in the dictates of natural justice, and most often administer an equity which has recognition under every system of law. That principle is that every one who, by his labor or materials, has contributed to the preservation or enhancement of the property of another, thereby acquires a right to compensation. ’ ’
 

 The decision of the Circuit Court of Appeals was reviewed by the United States Supreme Court,
 
 Great Southern Fire Proof Motel Co.
 
 v.
 
 Jones,
 
 193 U. S., 532, 24 S. Ct., 576, 48 L. Ed., 778, and affirmed.upon the reasons stated in the opinion of the Circuit Court of Appeals, it being stated in the syllabus that the statutes in question “do not deprive the owner of his property without due process of law nor unreasonably interfere with his liberty of contract and are not in these or other respects repugnant to the constitution of that State or the Constitution of the United States.”
 

 In any event, the amendment to the state Constitution has removed all doubts of the validity of such legislation, so far as our own fundamental law is concerned.
 

 Since the amendment of 1912, sweeping amendments have been made to the mechanic’s lien laws
 
 *327
 
 of this state. Section 8310, in its pertinent matter, reads as follows:
 

 “Every person who does work or labor upon, or furnishes * * * material # * * for erecting *
 
 *
 
 # a house * * * or other building * * * by virtue of a contract, express or implied, with the owner * * * of any interest in real estate, * * * and every person who shall as subcontractor * *
 
 *
 
 or- material man, perform any labor, or furnish * * * materials * * * to each [such] original or principal contractor * * * in carrying forward, performing, or completing any such contract, shall have a lien to secure the payment thereof * * * upon such house, * * * or other building * * * and upon the * * * material so furnished, and upon the interest * * * of the owner * * * in the lot or land upon which they may stand.”
 

 This section, standing alone, would give to any subcontractor, laborer, or materialman the right to a direct lien upon the property of the owner. That right is, however, modified and limited by the provisions of Sections 8312 and 8313, General Code. Section 8312, in its pertinent provisions, is as follows :
 

 “The original contractor shall, whenever any payment of money shall become due from the owner, * *
 
 *
 
 or whenever he desires to draw any money from the owner * * * under such contract * * * make out and give to the owner * * * a statement under oath showing the name of every laborer in his employ who has not been paid in full and also showing the name of every subcontractor in his employ, and of every person furnishing * * * ma
 
 *328
 
 terial * * * and giving the amount, if any, which is due or to become due to them. *
 
 * *
 
 And the original contractor shall also deliver to such owner, part owner, lessee, or mortgagee, similar sworn statements from each subcontractor, accompanied by like certificates from every person furnishing * * * material * * * to such subcontractor. ’ ’
 

 Section 8313 further provides:
 

 ‘ ‘ The owner, part owner or lessee who makes payments or distribution according to respective rights in the manner and form provided in Sections 8312 and 8313 of the General Code, shall not be liable to the subcontractors, material men or laborers for any greater amount than he contracted to pay the original contractor and shall be entitled to set off any damages which he may sustain by reason of any failure or omission in the performance of such contract, but the risk of all payments made to the original contractor after the owner, part owner, lessee or his authorized agent shall have received the notice above mentioned, or before the contractor shall have furnished him with the statement under oath as hereinbefore provided, shall be upon the owner, part owner, or lessee, until the expiration of sixty days within which claims for liens may be filed, as hereinafter provided, and no payment made to any contractor before the expiration of said sixty days, shall defeat any lien of any subcontractor, material man or laborer, unless such payment has been distributed among the subcontractors, material men, or laborers, or if distributed in part only, then to the extent of such distribution.”
 

 It is the interpretation of the language last quoted which must determine this controversy.
 

 
 *329
 
 Under the authority of the constitutional amendment of 1912, and upon the principles announced by the Supreme Court of the United States in
 
 Hotel Co.
 
 v.
 
 Jones, supra,
 
 the Legislature might have imposed upon the owner liability for the entire cost of the structure, regardless of the amount of the contract price with the principal contractor. The Legislature has in fact only imposed upon the owner the risk of seeing to the distribution of the amount of the contract price to the subcontractors, materialmen, and laborers. The weakness of the statute is that it does not provide how or to whom that distribution must-be made.
 

 Counsel for the Theatre Company contend that the requirements of the law are fully met if the principal contractor pays to the subcontractors the full amounts of their respective contracts, even though the aggregate of the subcontracts does not consume the entire sum paid to the principal contractor, and even though it should result that one or more of the subcontractors did not have a sufficient sum to pay his laborers and materialmen. It is the basis of this theory that the subcontracts constitute the units of distribution.
 

 It is contended by counsel for Hooper, material-man,. the lien claimant, that distribution must be made among all claimants in proportion to the amount of their respective claims, whether material-men, laborers, or subcontractors. It is, of course, conceded that Sections 8321 and 8322 create priorities which must be recognized; but, subject to those special preferences, it is claimed that the distributions should be general among all persons, regardless of the proportions of the subcontracts.
 

 
 *330
 
 In the absence of any guide in the statute itself as to how the distributions should be made, the problem is one of great difficulty.
 

 A study of the language of the statute itself indicates that, in the absence of any limitations upon the distribution, such distribution should be on the basis of the aggregate amounts due all persons who have contributed either labor or materials to the construction.
 

 There is another guide to the interpretation of these statutes, which is a familiar and well-settled rule of interpretation. These statutes are substantially the same as the mechanic’s lien laws of the state of Michigan, enacted in 1897. Those statutes had been repeatedly interpreted by the Supreme Court of Michigan before their enactment by the Legislature of Ohio. It is generally accepted as a fact that the Ohio general assembly adopted the Michigan statutes. This being true, the interpretation of the Michigan statutes, made by the Supreme Court of Michigan before adoption by the Ohio Legislature, should be adopted as the true interpretation of the Ohio statutes. This principle is declared in
 
 Gale
 
 v.
 
 Priddy,
 
 66 Ohio St., 400, 64 N. E., 437. The Michigan Supreme Court declared for the principle of
 
 pro rata
 
 distribution among all claimants, including subcontractors, materialmen, and laborers.
 
 Fairbairn
 
 v.
 
 Moody,
 
 116 Mich., 61, 74 N. W., 386, 75 N. W., 469;
 
 Smalley
 
 v.
 
 Gehring,
 
 121 Mich., 190, 79 N. W., 1114, 80 N. W., 797;
 
 Frolich
 
 v.
 
 Carroll, 127
 
 Mich., 561, 86 N. W., 1034;
 
 Delray Lumber Co.
 
 v.
 
 Keohane,
 
 132 Mich., 17, 92 N. W., 489. Our present mechanic’s lien laws were enacted in 1913. All of the foregoing Michigan cases interpreting the Michigan stat
 
 *331
 
 utes had been decided before adoption of these lien laws in Ohio. Another case has recently been decided which affirms the interpretation formerly made,
 
 vis. Lewis-Hall Iron Works
 
 v.
 
 Bethel African Methodist Episcopal Church,
 
 242 Mich., 126, 218 N. W., 760, 761. In the opinion of the court, we find the following:
 

 ‘ ‘ The defendants evidently have misread the statute. The statutory lien limit of liability for labor and materials is the amount of the contract between the owner and Zacks & Lerner, not of the Harris subcontract. Zacks & Lerner are not owners, part owners, or lessees, nor is Harris the original contractor. The statute obviously was designed as a measure of protection to the owner who, presumably, is not a builder and is not in a position to keep check of the costs of construction. There is no good reason to extend the statute beyond its plain language and confuse and restrict materialmen and laborers in order to give advantage to the principal contractor who is in complete control and can protect himself.”
 

 Much might be said on either side of this question, but it is not necessary, in affirming the decision of the Court of Appeals, to justify on equitable grounds the distribution of the contract price proportionately among all claimants. It is only necessary to arrive at the legislative intent, and that intent is presumptively shown by the foregoing decisions of the Supreme Court of Michigan.
 

 By complying with the statutory procedure, the owner could have been saved from any loss beyond the contract price. Even in his failure to do so he is only compelled to make good to any materialman, laborer, or subcontractor the- loss he has suffered by
 
 *332
 
 not having received his full share of the distribution of the contract price. In this case, Hooper received nothing. While the agreed statement of facts is not quite definite on the point, it is apparent by the decisions of the lower courts that the contract price was sufficient in amount to pay all claimants. On this theory, the courts did not err in sustaining the validity of Hooper’s lien.
 

 It is said in argument that the conclusions reached by the lower courts, in which we concur, are unsound, because the principle declared might permit a successful subcontractor, or a group of laborers and materialmen serving such subcontractor, to contribute to make up the losses caused by the bad judgment or misfortune of another less successful subcontractor. The successful subcontractor and those who deal with him are not more unfortunate in such event than the unsuccessful subcontractor, and those who deal with him, would be, where the situation is reversed. It is not the design of mechanic’s lien laws to assure security of payment to all claimants. They seek primarily to provide for equitable distribution of the contract price among, claimants. There are so many obvious difficulties by reason of the wide range of problems growing out of the execution of contracts with subcontractors that no rule will perfectly adjust all controversies. It is not the design of the mechanic’s lien laws to protect the wise and the diligent from the mistakes of the improvident. It might easily occur that a low bid of a subcontractor, made through mistake or inadvertence, would enable the principal contractor to make a large profit, while the laborers and materialmen, or the subcontractor, might suffer loss. Losses to subcon
 
 *333
 
 tractors are not always dne to a low bid, or to improvident or wasteful execution. They are frequently caused by unforeseen obstacles.
 

 In the briefs as well as in the oral arguments, reference has been made to certain guaranty obligations entered into to insure performance of the work, and possibly for payment for materials. We are not definitely informed as to the character, or binding force, or enforceability, of these indemnity obligations. They have no materiality in this discussion. The legal issues in this controversy must be determined by interpretation of the mechanic’s lien statutes and their application to the agreed facts. Such guaranties may give additional security to the persons indemnified, but cannot change.rights provided by the statutes, unless the statutes expressly so provide.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Jones, Day, Allen and Kinkade, JJ., concur. Matthias and Robinson, JJ., dissent.