*106
 
 Turner, J.
 

 Counsel are not agreed as to what questions are before this court.
 

 Section 12223-15, General Code, provides:
 

 “When the interest of a party is separate and distinct from that of all others in the suit, and he desires to appeal his part of it, it shall be so allowed by the court, and the penalty and bond fixed accordingly. The-court also shall make such order as to the papers,, pleadings, and copies thereof, and make such other orders as it deems right in view of'a division of the case for an appeal.”
 

 Section 12223-47, General Code, provides in part: “The Supreme Court may make and publish rules, with respect to procedure in the Supreme Court not. inconsistent with the laws of the state.”
 

 Rule II, Section 1(C) of the Rules of Practice of this court, provides:
 

 “A notice of cross-appeal may be filed in this court by an adverse party within twenty days after copy of notice of appeal is filed in this court. A party filing such cross-appeal shall be required to comply with all rules of this court applicable to an appellant.”
 

 Section 12223-4, General Code, provides in part:
 

 “Where leave to appeal must be first obtained, notice of appeal shall also be filed in the appellate court.” Section 12223-29, General Code, provides:
 

 “Except as to the judgment or final order of the Court of Appeals or a judge thereof, in cases involving questions under the Constitution of the United States,, or of this state, and in cases which originated in the Court of Appeals and except as to proceedings of administrative officers as may be provided b}7 law, no appeal shall be filed in the Supreme Court, in cases over which it has jurisdiction, without its leave, or that of a judge thereof.”
 

 Section 12223-7, General Code, provides in part:
 

 “The period of time after the entry of the order,, judgment, decree, or other matter for review within
 
 *107
 
 which the appeal shall be perfected, unless otherwise provided by law, is as follows:
 

 “1. In appeals to the Supreme Court * *
 
 *
 
 within twenty (20) days.”
 

 In addition to appellants and The Union Savings
 
 &
 
 Trust Company, appellee, the Court of Appeals passed upon the separate rights and separate liens of ten parties, each of whom had an interest separate and distinct from that of all the other lienholders.
 

 In the instant case, appellants’ notice of appeal was filed April 2, 1941, in both the Court of Appeals and in this court. That would give an adverse party until April 22, 1941, to file a cross-appeal
 
 in this court.
 
 No ■cross-appeal was filed in this court. On April 11,1941, appellee, The Western Reserve Lumber Company, did file in the Court of Appeals a notice of appeal from the judgment and decree of the Court of Appeals rendered on March 14, 1941. While in the caption it was described as “Notice of Cross-Appeal,” in the body ■of the notice it referred simply to “Appeal.” This notice was not timely filed, even in the Court of Appeals, as an original appeal, and no copy was filed in this court.
 

 The Western Reserve Lumber Company’s notice of appeal was insufficient either as an original appeal or as a cross-appeal.
 

 On May 8, 1941, there was filed in this court what was denominated “Concurrence in Motion to Certify” .and a brief in support of same by The Western Reserve Lumber Company, E. W. Limber, Lynn McPherson, Prank Stuart and .Russell T. Ritchey. No .action was taken on this motion, and mere consent to a motion to certify does not bring a case into this ■court.
 

 On August 15,1941, a brief on behalf of the appellees last above-mentioned and O. E. Blanchard and George Marsh was filed.
 

 
 *108
 
 On August 11, 1941, appellee Howk, who was the-original plaintiff below, and appellee William Recht filed a joint brief in this court.
 

 On September 3, 1941, appellee, The Union Savings- & Trust Company, filed a brief.
 

 The “Order to Certify-Record” (Order No. 2035) was allowed upon the motion of appellant.
 

 Under the former practice, a cross-petition in error, timely filed, was required to raise any question not raised by plaintiff in error’s petition in error.
 
 Damascus Mfg. Co.
 
 v.
 
 Union Trust Co.,
 
 119 Ohio St., 439, 452, 164 N. E., 530;
 
 King
 
 v.
 
 Real Estate & Improvement Co.,
 
 116 Ohio St., 185, 155 N. E., 797;
 
 Mannix, Assignee,
 
 v.
 
 Purcell,
 
 46 Ohio St., 102, 19 N. E., 572, 2 L. R. A., 753, 15 Am. St. Rep., 562.
 

 The practice outside of Ohio is not uniform. Tn 4 Corpus Juris Secundum, 1818, Section 1299, it is said:
 

 “In the absence of statute or rule of court giving-such right, it is frequently held that an appellee or defendant in error cannot make a cross assignment of errors unless he himself appeals or takes out a writ of error. Other cases, however, have, without express provision therefor, recognized the right to make a cross assignment without taking an appeal or suing out a writ of error, and such right is often accorded because of the provisions of statutes or court rules.
 

 “If the right to assign cross errors is dependent upon statute or rule of court, the extent of the right is determined thereby, and the provisions thereof must be complied with.”
 

 In 3 American Jurisprudence, 302
 
 et seq.,
 
 it is saidr
 

 “There is some conflict as’to the right to assign cross errors. The Federal courts take the view that an appellee or a defendant in error who takes no appeal or writ of error himself cannot, by assigning cross errors, confer jurisdiction upon a Federal appellate court to consider, review, or decide rulings against him in the court below. This view is followed in some-
 
 *109
 
 states. However, in other states, cross assignments of error are considered even though the appellees or defendants in error do not prosecute an appeal or error proceeding. * * * The general rule is that errors to the prejudice of the appellee or defendant in error will not be considered unless he assigns cross errors. There are exceptions to this rule, however.”
 

 The Ohio rule under the former practice is discussed in 2 Ohio Jurisprudence, 331, commencing at Section 290. In the Cumulative Supplement, there is added to note 14 on page 331 the following:
 

 “An appellee under the new procedural act must file his assignment of error and a cross-appeal asking reversal of a judgment erroneously prejudicial to him of which the appellant does not complain in his specification of error, in order to preserve his claimed error for review.” This note is based upon the practice in Courts of Appeals for at least two districts.
 

 This is the first instance in which the question of cross-appeals has been raised in this court under our present Appellate Procedure Act.
 

 In the case of
 
 State, ex rel. Hughes,
 
 v.
 
 Cramer, Judge,
 
 138 Ohio St., 267, 271, 34 N. E. (2d), 772, it was held in respect of an appeal taken from the trial court to the Court of Appeals that “When a party, whose interest is separate and distinct from that of all others in a suit, appeals his part of it and judgment is thereafter rendered in the trial court in the part of the suit not appealed, such judgment is not void.” This, of course, was a recognition of the fact that under our present Appellate Procedure Act, the whole case does not necessarily go up on appeal. This is particularly true in this court, where the only appeal is on questions of law.
 

 In our present procedure on appeal (Section 12223-1
 
 et seq.,
 
 General Code), no provision is made for cross-appeals. Any aggrieved party may appeal in
 
 *110
 
 his own right, and Section 12223-21, General Code, provides in part:
 

 “Appeals taken on questions of law shall bo heard upon assignments of error filed in the cause or
 
 set out in the briefs of the appellant before hearing.
 
 Errors not argued by brief- may be disregarded, but the court, in its discretion, may consider and decide errors which are not assigned or specified.” (Italics ours.)
 

 Therefore, we sustain the objections of appellants and appellee, The Union Savings & Trust Company, to the consideration of any assignment of error other than those made by the appellants.
 

 Appellants propound the following question, which is fundamental to their case:
 

 “Where the owners of real estate have contracted for the construction of a home and in the course of construction have made payments upon account of the contract price after receiving in each instance sworn statements from the contractor accompanied by certificates of materialmen and otherwise substantially complying with the mechanic’s lien
 
 law
 
 — except
 
 that they failed to procure similar sworn statements from subcontractors■
 
 — are the owners or their property subject to penalty by way of liens in excess of those provided by the statutes and the decision of this court in
 
 Theatre Company
 
 v.
 
 Hooper,
 
 123 Ohio St., 322,
 
 i. e.
 
 in excess of the amounts the holders of valid, liens would have received if the owners had fully and strictly complied with the mechanic’s lien law?” (Italics ours.)
 

 The answer, upon the facts of this case and the holding of this court in
 
 Chapel State Theatre Co.
 
 v.
 
 Hooper,
 
 123 Ohio St., 322, 175 N. E., 450, is “Yes.”
 

 The case of
 
 Theatre Co.
 
 v.
 
 Hooper, supra,
 
 is applicable here only in a negative way. In that case, the contract price was sufficient to cover the entire cost of the improvement. In the instant case, the contract
 
 *111
 
 price plus the cost of extras was insufficient — amounting to only 80 per cent of the cost.
 

 No case decided by this court establishes a precedent for determining the limit of risk of an owner who fails to comply with the requirements of Sections 8312 and 8313, General Code, where the cost price plus the cost of extras are not sufficient to cover all costs of the improvement.
 

 It will not help to indulge in or refer to previous criticisms of the structure, phraseology, indefiniteness, etc., of our mechanic’s lien law. We must deal with the law as we find it.
 

 Section 33 of Article II, Constitution of Ohio, provides:
 

 “Laws may be passed to secure to mechanics, artisans, laborers, sub-contractors and material men, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the Constitution shall impair or limit this power.”
 

 Under the authority of the foregoing constitutional amendment, the Legislature might have imposed upon the owner liability for the entire cost regardless of the contract price agreed upon between the owner and the principal contractor. Section 33 of Article II, supra, and
 
 Great Southern Fire Proof Hotel Co.
 
 v. Jones, 193 U. S., 532, 48 L. Ed., 778, 24 S. Ct., 576.
 

 There are three features of the mechanic’s lien law to which attention should be directed here:
 

 1. For the protection of those who helped to build —Section 8310, General Code.
 

 2. For the protection of the owner — Sections 8312 and 8313, General Code.
 

 3. For the protection of the mortgagee, who advances the money to make the improvement — Section 8321-1, General Code. As no cross-appeal was perfected in this court, we shall not pass upon the status of the mortgage or the priorities, if any, under it.
 

 
 *112
 
 Section 8310, General Code, gives a direct lien to every person who does work or labor upon or furnishes material for erecting a house or other building by virtue of a contract with the owner of any interest in real estate, and also gives a direct lien to every subcontractor or materialman who performs labor or furnishes material for or to the principal contractor.
 

 Sections 8312 and 8313, General Code, provide in substance that upon compliance therewith the liens authorized under Section 8310, General Code, shall be limited to the amount agreed upon between the owner and the principal contractor. However, it is specifically provided in Section 8313:
 

 “ * * * but the risk of all payments made to the original contractor after the owner * * * shall have received the notice above mentioned, or before the contractor shall have furnished him with the statement under oath as hereinbefore provided, shall be upon the owner * * * until the expiration of sixty days within which claims for liens may be filed, as hereinafter provided,
 
 and no payment made to any contractor before the expiration of said sixty days, shall defeat any lien of any subcontractor, material man or laborer, unless such payment has been distributed among the subcontractors, material men or laborers, or if distributed in part only, then to the extent of such distribution
 
 * * (Italics ours.)
 

 It is- the contention of appellants that:
 

 "The lien claimants are only entitled to the amount of any loss they have suffered by not having received their full -share of the distribution of the contract price.”
 

 Appellants proceed upon the theory that noncompliance with Sections 8312 and 8313, General Code, does not make the owners liable for all obligations of the contractor to unpaid subcontractors, materialmen and laborers. Instead, appellants claim that such noncompliance makes the owners liable only to the extent
 
 *113
 
 of any loss sustained by the claimant due to the owners’ noncompliance. This, of course, is a denial of the premise that the-claimant has a direct lien for his entire claim unless the owners comply with the provisions of Sections .8312 and 8313,
 
 supra.
 

 In this case, the owners say, in substance, “Yes, we failed to comply, but if we had complied the claimants would have received only X dollars, which we stand ready to pay them.” At first blush this sounds equitable, but when note is taken of the constitutional authorization and the statutory provision that a direct lien is given to the claimant for his full claim, and that the only way an owner may avoid paying the claim in full is by compliance with the terms of Sections 8312 and 8313,
 
 supra,
 
 the matter is seen in a different light. Failure of the owner to comply does not reduce his liability to a question of damages
 
 pro tanto.
 
 On the contrary, the lien for the full amount is good, unless the owner can show compliance.
 

 This construction may seem harsh from the owner’s viewpoint, but certainly it is not harsh from the viewpoint of the claimant or a proper interpretation of the constitutional amendment and the legislation enacted pursuant thereto. Be it harsh from any angle the remedy, if any, is legislative, not judicial.
 

 Appellants claim that such construction of the statute would create a penalty against the owner. We cannot accept this view. Instead of creating a penalty against the owner, any other construction would create a penalty against the lienholders.
 

 Sections 8312 and 8313 provide a method whereby an owner may limit his liability under the lien authorized by Section 8310, General Code, to the amount agreed upon between the owner and the principal contractor, thus cutting down the amount secured by the liens of the workmen, subcontractors and materialmen.
 

 We think that the spirit, purpose and letter of the constitutional provision and the mechanic’s lien law
 
 *114
 
 authorized thereby call for a strict construction of any provision which limits the right of the lienholder to be paid in full for labor bestowed on or material furnished for an improvement on real estate.
 

 As appellants’ rights were not prejudiced by the decree of the Court of Appeals, and as no cross-appeals were perfected, the decree of the Court of Appeals must be, and hereby is, affirmed.
 

 Decree affirmed.
 

 Weygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.
 

 Bettman, J., not participating.