THE QUALITY HEATING SUPPLY CO., APPELLANT, *v.* THE BUCKEYE LOAN AND BUILDING CO., APPELLEE.

(No. 8330—Decided November 18, 1957.)

*Mr. George Rallis* and *Mr. Harry H. Baker,* for appellant.
*Messrs. Lindhorst & Dreidame,* for appellee.

MATTHEWS, J.   This is an action by a materialman to foreclose a mechanic's lien upon real estate owned by the defendant. The case comes to this court upon appeal on questions of law and fact from the Common Pleas Court.

The defendant entered into a contract with Miller & Company, on or about February 24, 1954, whereby Miller & Company, in consideration of $20,300, agreed to install air-conditioning equipment in a building owned by the defendant. Payments were to be made "as deliveries are made and work progresses as approved by architect."

Miller & Company started to furnish and install the equipment, and the defendant, on several occasions in April and May of 1954, made payments on account of the contract price. These payments totaled $14,989.91, and were made without the approval of an architect, and, apparently, without reference to the progress of the work, unless it can be said that the defendant itself made an estimate of the progress before making payments.

The plaintiff furnished material upon an open account to Miller & Company, and made deliveries thereof on the defendant's premises, and, by October 1954, this account showed about $4,100 due, and at that time the plaintiff submitted a bill for $4,100 to Miller & Company, and Miller & Company gave the plaintiff two checks totaling $4,100. There is evidence that these checks were to be withheld until Miller received payment from the defendant, but, in this connection, it is sufficient to say that the checks were not paid, and while it is contended that these checks constituted payment and precluded a lien, we think it is clear that they were accepted only on condition that they would be honored and not as payment per se. They were given to be used only if and when the defendant furnished Miller & Company sufficient funds with which Miller & Company could arrange to have the checks honored, and defendant did not supply the funds.

It was apparent by that time that a dispute was developing between Miller & Company and the defendant as to the extent and quality of the installation. This was brought into the open at a meeting held on or about November 1, 1954, between representatives of the plaintiff, the defendant and Miller & Company. At that meeting, the plaintiff had the unused checks and claimed that the plaintiff had furnished all the material, in which it dealt, necessary to complete Miller & Company's contract with defendant, and wanted payment.

However, the plaintiff thereafter made deliveries of certain parts of small value, on six different occasions, the last delivery, according to the plaintiff and its books, being made on November 26, 1954. There is a dispute as to all these deliveries.

At the meeting of November 1st, Miller & Company contended that it had fully performed, and the defendant contended that Miller & Company had not fully performed. The defendant refused to make any further payments at that time, and the meeting adjourned. Apparently, the defendant still hoped that Miller & Company would complete the installation according to its demands, and, on November 19th—about 18 days after the meeting—the defendant wrote Miller & Company a letter in which it referred to a telephone conversation of the previous day, and in that letter set forth in great detail the respects in which the installation was deficient and expressed the hope that Miller & Company would "complete your work as agreed in your contract * * * in a good and workmanlike manner." The defendant's witness testified to the same effect. At a later date, not made specific by the evidence, Miller & Company was either voluntarily or involuntarily in bankruptcy.

As already noted, the plaintiff's last delivery was on November 26, 1954, and it waited until the sixtieth day thereafter to file its affidavit claiming a lien. The delivery of November 26th is disputed.

Now, what is the evidence on the subject of the delivery of November 26th?

The president of the plaintiff corporation testified that, on November 26th, he received an order from an employee of Miller & Company, who was in charge of the work, to send the items to him on the premises, and that he visited the premises and saw the articles in the basement. The driver of the truck testified that he delivered the items on the premises and took a receipt from Miller & Company's employee. That receipt was introduced in evidence. The only other evidence on the subject was the testimony of the defendant's vice-president in charge of this installation. He testified, on direct examination, that no delivery was made on November 26th, and that no deliveries were made after November 1st. However, on cross-examination, he stated that material could have been delivered to the building without his knowledge.

On this evidence we conclude that the delivery on November 26th has been proven by the preponderance of the evidence, and that the lien affidavit was filed within the time required by law.

But the defendant contends that the amount which it paid to Miller & Company and the cost of completing the installation in accordance with the contract have exhausted the contract price, and that, therefore, there is no fund on which to fasten the lien. On the other hand, the plaintiff contends that even by giving the defendant credit for the cost of completing the air-conditioning of the building in accordance with the contract, there still remains a fund more than sufficient to satisfy the plaintiff's lien. This claim is postulated on its contention that none of the payments made by defendant were in accordance with the terms of the contract. This claim requires a consideration of the evidence relating to the circumstances under which these payments were made.

It is admitted that the first payment, amounting to $1,900, was made to Miller & Company, the principal contractor, without either a contractor's affidavit, as required by Section 1311. 04, Revised Code, or an architect's certificate, and that all other payments were made upon the affidavit of the principal contractor, that in form complied with said section, averring that the amount requested was due, and that there was nothing owing by Miller & Company to any subsequent contractor or materialman, but without the certificate of an architect as to the progress of the work.

As already noted, the contract provided that "payments are to be made as deliveries are made and work progresses as approved by architect."

Can these payments which were made, either without the architect's certificate as to the progress of the work or the affidavit of the principal contractor, be charged against the contract to the detriment of the materialman? It is manifest that the defendant made payments to Miller & Company which were not justified by the progress of the work, and that this depletion of the balance due under the contract might have been avoided had the defendant required an architect's certificate as to the status of the work. The procedure prescribed by Sections 1311.

01 to 1311.47, Revised Code, is designed to prevent the depletion of the contract price until all those who have expended labor or furnished material have been paid, or until the entire amount due the principal contractor has been exhausted by them.

By Section 1311.04, Revised Code, the right of the principal contractor to any part payment is expressly limited to such as is then due under his contract with the owner, and then only if he complies with the provisions of that section. Subcontractors, laborers, and materialmen have a right to rely on the statute and that no payments will be made to the principal contractor to their detriment.

The principal contractor is entitled to none of the contract price unless and until all the laborers, materialmen and subcontractors are paid in full. He must show by sworn certificates that there is an excess after making such payments as a condition precedent to recovering any part of the contract price. Section 1311.04, Revised Code, prescribes the procedure, and then provides that "* * * any payments made by the owner * * * before such statements are made or without retaining sufficient money, if that amount is due or it is to become due, to pay the subcontractor, laborers, or materialmen, as shown by the said statements and certificates, are illegal and made in violation of the rights of the persons intended to be benefited by Sections 1311.01 to 1311.24, inclusive, of the Revised Code." The intent is entirely clear.

This section was applied in *Chapel State Theatre Co.* v. *Hooper,* 123 Ohio St., 322, 175 N. E., 450, and it was said, as stated in the second and third paragraphs of the syllabus:

"2. In the event of the failure to require such certificates to be furnished before making payment to the contractor, the owner bears the risk of the distribution of all payments made to the contractor ratably among all unpaid subcontractors, materialmen and laborers.

"3. Where the contract price agreed to be paid by the owner to the principal contractor is sufficient in amount to pay the claims of all persons contributing labor and materials to the structure, and one of the subcontractors is unable to pay his laborers and materialmen out of the price he receives on his subcontract, and the owner makes payment to the principal con-

tractor without receiving the certificates required by Sections 8312 and 8313, such materialmen and laborers are entitled to a direct lien upon the property of the owner.''

It is urged, however, that the material delivered on November 26th was for the purpose of being used to correct mistakes discovered in a completed job. We find no evidence that the defendant or its architect ever accepted this work. On the contrary, the defendant specified in great detail the many respects in which the work was incomplete and not in conformity to the contract. Miller & Company's employee was still at work on the premises. He gave the order for the items of November 26th, and the plaintiff delivered them to him on the defendant's premises and thereby fixed the date from which the period for filing the lien should be calculated. As stated in Section 1311.06, Revised Code, ''such affidavit shall be filed within 60 days from the date on which the last * * * material * * * was furnished at the building.''

The statute does not require as a condition of the lien that the material shall be actually fabricated into the building or even that it was actually needed in the construction. The only requirement is that the principal contractor order it for said purpose and that the materialman, in good faith, should deliver it at the building supposing it was so needed.

Counsel for defendant relies on *Walter* v. *Brothers,* 42 Ohio App., 15, 181 N. E., 554, but in that case it was the principal contractor who sought foreclosure of the lien. He had completed the house in December. The plaintiff claimed that he had returned to the job on May 19th following, when he placed some asbestos lining on a pipe in the garage. By that time, the owner had gone into bankruptcy. The court really held that the action of the contractor was not a bona fide attempt to complete a necessary part of his contract, but was, in fact, an attempt to lay a spurious foundation for a mechanic's lien, the time for filing which had expired.

We think the court correctly stated the law applicable to the facts in that case. At pages 17 and 18, the court said:

''It has been repeatedly held in Ohio and other jurisdictions that where work or material is in good faith furnished, at the request and with the knowledge of the owner, to remedy defects

in the original work, this is sufficient to establish a new period from which the time for filing the affidavit or claim of a lien is to be computed; but where the work contracted for is completed according to contract, as the contractor believes, and he later discovers defects and voluntarily undertakes, after the time for completing the contract has expired, *without authority from the owner,* to remedy the trouble, it is held in most cases, especially where the work or material is trivial, that such work does not extend the time for filing a lien."

"* * *

"* * * A true test is whether the alleged repairs are a necessary part of the proper completion and performance of the work which the lien claimant undertook to do, and an attempt in good faith to perform the contract, and not merely an effort to extend the time for filing an affidavit for a lien." (Emphasis added.)

The case at bar is clearly distinguishable in that in that case the claimant was the principal contractor, and in the case at bar it is a materialman, who was not bound to the owner by any contract; and in that case the action taken was not a bona fide action to complete the contract, whereas, in this case the action by the materialman was taken, in good faith, on the initiative of the principal contractor who was acting on the insistence of the owner that he complete performance.

In the case at bar, the defendant seeks credits in the sum of $9,632.91, for deficiencies in the performance, and certainly is in no position to assert that performance was complete prior to November 26th, or at any other time.

In the case of *Seybold* v. *Linden Floor Co.,* 73 Ohio Law Abs., 1, 136 N. E. (2d), 666, and relied on by the defendant, the plaintiff filed its affidavit for a lien more than 60 days after the job had been completed, but within 60 days after it had delivered some material for which payment was made in cash. It is sufficient to distinguish that case from the case at bar to point out that the court found, as a matter of fact, that the material was not furnished as a part of the contract for which the lien was claimed, whereas, in the case at bar, we find that the material delivered on November 26th was furnished in performance of the contract between the defendant and Miller & Company, which is the basic contract upon which this lien is predicated.

376

Upon the whole case, we find that there is an unpaid balance of the contract price, subject to the mechanic's lien, and that the plaintiff complied with the law to fasten the lien upon such fund and within the time required by law.

A decree may be presented in accordance with this opinion.

*Judgment accordingly.*

HILDEBRANT, P. J., and LONG, J., concur.