PLUMBING CONNECTION, INC., *v.* KOSTELNIK ET AL.

(No. 79 CIV 0315—Decided June 2, 1980.)

Court of Common Pleas of Lake County.

*Mr. Paul A. Newman,* for plaintiff.

*Ms. Hope J. Balint, Mr. Richard H. Miller, Mr. A. P. Leary, Mr. T. C. Wm. Tattersall, Mr. David Welty, Mr. James F. Csank, Mr. John D. Cannell, Mr. Robert Ryan, Mr. Wayne Davis, Mr. Dennis Reid* and *Mr. David E. Griffiths,* for the various defendants.

MITROVICH, J. This is a foreclosure action on a mechanic's lien by several subtrades and materialmen arising out of a contract to build a house for the defendants Kostelnik. The defendants Kostelnik contracted with the American

Custom Homes, Inc. to build a house for a contract price of $64,800. The Kostelniks obtained a loan from the defendant Broadview Savings & Loan to finance construction.

As the defendant American Custom Homes, Inc. progressed in the work, the defendant Broadview Savings & Loan disbursed funds from the loan without obtaining affidavits of subtrades and materialmen from the contractor.

Broadview Savings & Loan paid out a total of $37,700 in three payments. On May 15, 1978, the facts indicate Broadview determined the structure to be 15 percent complete, but disbursed $17,200 or 26.4 percent of the contract price. On August 15, 1978, Broadview estimated the work to be 45 percent complete and disbursed another $17,000 representing a total payment of 52.4 percent. Then, on September 21, 1978, Broadview paid an additional $3,500 for a total payment of 58.2 percent of the contract price for 45 percent of the work completed.

Prior to disbursement, defendant Broadview, failed to obtain from the contractor, the subcontractor and materialmen affidavits as required by R. C. 1311.011 (B) (4). The several subcontractors and materialmen filed affidavits and served notice on defendant Broadview. Broadview disregarded the liens and notices and made the last payment.

American Custom Homes, Inc. shortly thereafter ceased doing business without completing the contract, without payment of the liens, and after receiving more funds than it was entitled under the contract or the policies of the bank.

The defendants Kostelnik thereafter acted as the general contractor and by doing some of the work themselves, completed the structure for $64,800. This left several subtrades with liens for unpaid balances of:

| | |
|---|---:|
| Desplinter & Co. | $ 2,500.00 |
| Del Lumber | 16,477.85 |
| R. W. Sidley, Inc. | 336.54 |
| Stowe Construction | 6,422.16 |
| Mentor Lumber | 136.12 |
| TOTAL | $25,872.67[2] |

The issues to be considered are:

---

[2] Plumbing Connection's lien for $2,080 has been settled and dismissed.

1. Whether the liens of the subtrades and materialmen are valid and in compliance with the law.

2. Whether the defendants Kostelnik, as owners of the real property, are liable under the several liens for labor and material not paid for under the original contract; or, whether the liens cannot be enforced against the defendants Kostelnik by operation of R. C. 1311.011.

3. Whether the actions of the defendant Broadview Savings & Loan in payment of funds to the contractor were in violation of R. C. 1311.011, creating liability for the unpaid liens.

4. Whether Broadview's actions in payment of funds to the contractor were not negligent or were negligent, grossly negligent or fraudulent.

The basis of the Ohio Mechanic's Lien laws is to make the real property responsible in the first instance for any claims for material or labor which, when added to the property, increases its value. When the technicalities of time, notice and service are performed properly, the lien is valid, only subject to proper defenses related to amount etc. This is so basic to the lien laws that it is unnecessary to support the view with citations of authority.

## I.

Subtrades and materialmen liens must be perfected by compliance with R. C. 1311.02, 1311.06, 1311.07, and in some cases, R. C. 1311.04. The "subs" in the instant case have properly perfected their liens by filing affidavits pursuant to R. C. 1311.06 within the required time. In addition, R. C. 1311.07 has been complied with by service of copies of the affidavits upon the defendants Kostelnik.

The defendant Broadview argues the liens are invalid because there has not been compliance with R. C. 1311.04. *UNECO, Inc.* v. *Metropolitan Corp.* (1973), 34 Ohio Misc. 58, disposes of the issue by stating R. C. 1311.04 is not applicable if R. C. 1311.06 and 1311.07 have been satisfied.

Accordingly, the court finds the liens of the subtrades and materialmen to be in proper form and valid.

## II.

There is no dispute as to the liability of American Custom Homes, Inc. and, therefore, judgment in the contract price in

favor of the subtrades and materialmen ought to be granted.

### III.

The defendants Kostelnik make two arguments. First, under the statute, they argue the owners should never have to pay more than their contract price in completing their home and satisfying the "subs" liens. Second, R. C. 1311.011 (B) (1) protects the owners from liens once payment to the contractor in full is made for the work completed.

R. C. 1311.011 (B) (1) provides, in part:

"No subcontractor, materialman, or laborer has a lien to secure payment for work done, or for labor, materials, machinery, or fuel furnished by him, in connection with a home construction contract between the original contractor and the owner, part owner, or lessee or in connection with a dwelling or residential unit of condominium property, that is the subject of a home purchase contract, *if the owner,* part owner or lessee *paid the original contractor* in full or if the purchaser has paid in full for the amount of the home construction or home purchase contract price, and the payment was made prior to the owner's, part owner's, or lessee's receipt of a copy of an affidavit of mechanic's lien pursuant to section 1311.07 of the Revised Code." (Emphasis added.)

The Kostelniks argue that "paid in full" means "paid in full for the amount done by the contractor," not "paid the full contract price."

R. C. 1311.011 (B) (1) provides that no subcontractor has a lien if the original contractor has been "paid in full." R. C. 1311.011 (B) (2) provides the relief afforded the lien holder if the *original* contractor has not been paid in full; in that event:

" * * * The total amount of all liens for work done or for labor, materials, machinery, or fuel furnished in connection with a home construction contract that may be enforced in lien foreclosure proceedings shall not exceed the amount due under the home construction contract that has not been paid to the original contractor or the amount due under the home purchase contract that has not been paid to the original contractor."

The amount due under the home construction contract in this case is $64,800. Only $37,700 has been disbursed to the *original* contractor. Therefore, $27,100 is subject to the liens.

Also, R. C. 1311.011 should be read in light of the rest of the mechanic's lien statute. R. C. 1311.05 provides that an

owner who makes payment in the manner provided by R. C. 1311.04 and .05 is not liable to subcontractors:

" * * * for any greater amount *than he contracted to pay* the original contractor and he may set off any damages which he sustains by reason of any failure or omission in the performance of such contract, *but the risk* of all payments made to the original contractor * * * before the contractor has furnished him with the statement under oath as provided in Section 1311.04 of the Revised Code *is upon the owner.* * * * " (Emphasis added.)

Thus, R. C. 1311.011 (B) (1), when read in light of R. C. 1311.05, clearly requires that the contractor be "paid in full" *for the contract price* before the owner is protected. It is also clear that the owner may end up paying more than his contract price to complete his home—"the risk * * * is upon the owner." Case law backs this position. *Quality Heating Supply Co.* v. *Buckeye Loan and Building Co.* (1957), 105 Ohio App. 369, states in headnote No. 1:

"Where a contract for the air conditioning of a building provides that payments are to be made to the contractor by the owner 'as deliveries are made and work progresses as approved by architect,' *payments made by the owner, without either a contractor's affidavit or an architect's certificate, are illegal, violative of the rights of subcontractors, laborers and materialmen under Section 1311.01 et seq., Revised Code, and, although such payment may have exhausted the balance due the contractor under the contract, may not be charged against the contract to the detriment of a materialman.*" (Emphasis added.)

Also, *Chapel State Theatre Co.* v. *Hooper* (1931), 123 Ohio St. 322, rules:

"1. By virtue of Section 8312 and 8313, General Code, [predecessors of R. C. 1311.04 and 1311.05], an owner cannot be held liable to subcontractors, laborers, and materialmen, beyond the price agreed to be paid to the principal contractor, *if* compliance is made with the provisions of those sections relating to statements of unpaid claims of persons who have contributed labor and materials to the structure. [Emphasis added.]

"2. In the event of the failure to require such certificates to be furnished before making payment to the contractor, the

owner bears the risk of the distribution of all payments made to the contractor ratably among all unpaid subcontractors, materialmen and laborers."

*Hooper* places the burden where it should be when it states at 331:

"By complying with the statutory procedure, the owner could have been saved from any loss beyond the contract price."

*Hooper* also states at 332:

"It is not the design of mechanic's lien laws to assure security of payment to all claimants. They seek primarily to provide for equitable distribution of the *contract price* among claimants." (Emphasis added.)

Finally, the court in *B.A.M., Inc.* v. *McDonald* (1965), 5 Ohio App. 2d, 166, at 168, ruled:

"In the case of *Walker* v. *Ball,* 113 Ohio App. 313, this court held in paragraph two of the syllabus:

" 'In an action to enforce a subcontractor's mechanic's lien, the owner cannot take credit for payments made to the contractor without securing from him an affidavit that all laborers and materialmen have been paid, such payments being made at the owner's risk.' "

Further, if the Kostelniks' definition of "full payment" is accepted, it would be possible for an owner to prevent any lien from taking effect. The second paragraph of R. C. 1311.011 (B)(1) invalidates any lien perfected after "full payment" is made. Accepting the Kostelniks' definition, by paying the contractor daily (or sooner) the owner could effectively preclude any lien from taking effect, since the lien would be perfected after "full payment" for the work completed. This is an absurd result which the Legislature could not have intended. Therefore, "full payment" as used in R. C. 1311.011(B)(1) should be construed to mean "full payment of the contract price."

The court concludes the subcontractors are not required to furnish an affidavit pursuant to R. C. 1311.04 and the liens are valid and foreclosure should proceed.

## IV.

As to Broadview's negligence, R. C. 1311.011 (B) (4) and (5) provide the standard which the lending institution must follow. These sections provide:

"(4) No lending institution shall make any payment to any original contractor until the original contractor has given the lending institution his affidavit stating:

"(a) That the original contractor has paid in full for all work performed and for all labor, materials, machinery or fuel furnished by the original contractor and all subcontractors, materialmen, and laborers prior to the date of the closing of the purchase or during and prior to the payment period, except such unpaid claims as the original contractor shall specifically set forth and identify both by claimant and by amount claimed;

"(b) That no claims exist other than those claims so set forth and identified in the affidavit required by division (B) (4) of this section.

"(5) When making any payment under the home construction contract or on behalf of the owner or part owner under a home purchase contract, the lending institution may accept the affidavit of the original contractor required by division (B) (4) of this section and act in reliance upon it, unless it appears to be fraudulent on its face. The lending institution shall not be financially liable to the owner, part owner, purchaser, lessee, or any other person for any payments, except for *gross negligence or fraud* committed by the lending institution in making any payment to the original contractor.

"After receipt of a written notice of a claim of a right to a mechanic's lien by a lending institution, failure of the lending institution to obtain a lien release from the subcontractor, materialman, or laborer who serves notice of such claim is prima-facie evidence of gross negligence." (Emphasis added.)

It is clear that the lending institution is not liable for mere negligence; it must be guilty of gross negligence. The issue is, what is gross negligence? Broadview argues that it is guilty of gross negligence only when it makes a disbursement without obtaining a lien release after it receives a "written notice of a claim of a right to a mechanic's lien." Broadview reasons that since the statute provides that disbursement under such conditions is "prima facie evidence of gross negligence," no other conduct constitutes gross negligence.

Such reasoning is faulty. While it is clear that a disbursement under such conditions constitutes gross negligence, it is equally clear that disbursement under the fact situation pres-

ent in this case is also an example of gross negligence. Three facts point to Broadview's gross negligence:

First, Broadview did not comply with R. C. 1311.011 (B) (4). Section 1311.011 (B) (4), which is mandatory (as evidenced by the use of "shall") in tone, states that no disbursements shall be made until the lending institution has received the required statement from the general contractor. Broadview's disbursements were in direct violation of this statute.

Non-compliance with R. C. 1311.011 (B) (4) is raised to the level of gross negligence when viewed in light of the construction loan agreement which authorized Broadview to make payments without first obtaining the statements described in R. C. 1311.04 and .05.

Further, the second paragraph of R. C. 1311.011 (B) (5) was not meant to provide the only definition of Broadview's possible gross negligence. The better interpretation is obtained by reading the second paragraph in light of the first paragraph of R. C. 1311.011 (B) (5). The first paragraph permits the lending institution to rely on the contractor's "R. C. 1311.011 (B) (4)" statement when it makes disbursements, without incurring liability. The second paragraph of R. C. 1311.011 (B) (5) should be interpreted to mean that the lending institution *cannot* rely on the (B) (4) statement after it receives "written notice of a claim of a right to a mechanic's lien." Reliance on the (B) (4) statement after receipt of notice is gross negligence.

The second fact which reveals Broadview's gross negligence is its disbursements in disproportion to the work actually completed. On three occasions Broadview disbursed to the contractor more than he was entitled, thereby potentially acting in detriment to the subcontractors.

Finally, the fact that Broadview did not receive the (B) (4) statement from American Custom Homes, Inc., a company in obvious financial difficulties, as evidenced by the fact that American Custom Homes, Inc. is no longer a going concern, further points out Broadview's gross negligence. The testimony of Mr. Ham, defendant Broadview's representative, clearly indicated the business relationship of Broadview and American Custom Homes, Inc. on other matters and at least infers Broadview must have known something of American

Custom Homes, Inc.'s difficulties and pending exit of American Custom Homes, Inc. from the building scene.

Therefore, the Kostelniks should recover against Broadview for its gross negligence in making disbursements under R. C. 1311.011. However, the court recognizes that the Kostelniks have released their claim against Broadview pursuant to this court's journal entry of January 30, 1980. Therefore, judgment shall not be rendered in favor of the Kostelniks, as the journal entry of January 30, 1980 makes that issue moot.

The lien holders should not recover against Broadview Savings & Loan for gross negligence in making disbursements under R. C. 1311.011. R. C. 1311.011 (B) (2) provides the relief afforded lien holders if the original contractor has not been paid. That relief lies in foreclosure. Since the amount of all liens " * * * that may be enforced in lien foreclosure proceedings,"(*i.e.,* $25,872.67) does not exceed the amount of the home construction contract that has not been paid to the *original* contractor ($27,100) all claims of lien holders can be satisfied in foreclosure proceedings. Therefore, Broadview Savings & Loan is not liable to the lien holders under the "any other person" clause of R. C. 1311.011 (B) (5). R. C. 1311.011 (B) (5) primarily protects the owner and other parties named in the statute. Lien holders must first rely on R. C. 1311.011 (B) (2) for satisfaction; if their claims cannot be satisfied under that section, then lien holders may rely on R. C. 1311.011 (B) (5).

*Judgment accordingly.*