RELIANCE UNIVERSAL, INC., APPELLANT AND CROSS-
APPELLEE, *v.* DELUTH CONSTRUCTION COMPANY, APPELLEE;
NORTHLAND PARK HOMES, INC., ET AL.,
APPELLEES AND CROSS-APPELLANTS.

[Cite as Reliance Universal, Inc., v. Deluth Construction Co.
(1981), 67 Ohio St. 2d  56.]

(No. 80-1197—Decided July 1, 1981.)

*Messrs. Gingher & Christensen, Mr. Daniel G. Hale, Mr.*

58

*Malcolm L. Miller* and *Mr. John M. Mahota,* for appellant and cross-appellee.

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee* and *Mr. James E. Melle,* for appellees and cross-appellants.

CELEBREZZE, C. J.   The critical consideration in this case is whether a property owner (Northland Park) obtains the protection of R. C. 1311.05 against the mechanics' lien of a materialman (Reliance) when the property owner pays a contractor (Deluth Construction) without specifically complying with the requirements of R. C. 1311.04. Reliance contends that Northland Park's failure to secure a sworn statement from the contractor precludes Northland Park from defeating the lien. Northland Park, on the other hand, argues that an owner is not liable for any errors in a certificate of materialman unless the owner is notified of these mistakes pursuant to R. C. 1311.05. Northland Park and United States Fidelity further submit, in a cross-appeal, that, in any event, their liability is discharged because, despite the fact that Reliance, Deluth Construction's creditor, had in its possession, over the course of time, enough money of the debtor, Deluth Construction, to discharge the debt, Reliance failed to do so. For the reasons that follow, we reverse judgment of the Court of Appeals.

In arriving at our decision today, we are guided by the fundamental purpose of Ohio's mechanics' lien laws. More precisely, the General Assembly, in enacting this statutory framework, intended to secure the claims of creditors, like Reliance, whose labor and materials enhance property values, yet, who might otherwise go uncompensated. This court has consistently recognized that, "***[t]he labor of the workman and the material of the material-man having contributed to the erection of the structure; having, indeed, created, in part the very property on which the lien is sought to be attached, the purpose of the law is to give to such parties the right, when the contractor refuses to pay, to be paid for their labor and material out of the fund which has been earned under the contract, and out of the structure, and the land upon which it stands, such claim, as to amount, not to be in excess of the claim of the contractor as measured alone by the contract and

his performance of it." *Bullock* v. *Horn* (1886), 44 Ohio St. 420, 424. See, generally, *Howk* v. *Krotzer* (1942), 140 Ohio St. 100.

Indeed, this protection of the rights of unpaid material-men is specifically reinforced in Section 33, Article II of the Ohio Constitution, which provides: "Laws may be passed to secure to mechanics, artisans, laborers, sub-contractors and material-men, their just dues by direct lien upon the property, upon which they have bestowed labor or for which they have furnished material. No other provision of the constitution shall impair or limit this power."

Among the many allegations, conflicting witnesses, appeals and cross-appeals, no one has ever denied the fact that Reliance has yet to be fully compensated for its pipe.

In order to place our ruling in proper perspective, it is imperative to note two other facts in the record. Initially, the Court of Appeals erred in determining that John C. Merritt, Reliance's vice-president, substituted the words "amount due" for the phrase "Paid In Full" on the certificate of materialman. As defendant's exhibit KK[2] unambiguously indicates,

---

[2] The certificate of materialman actually reads as follows:

### CERTIFICATE OF MATERIALMAN

CITY _____ Columbus, _____ STATE _Ohio_ 5/23/ 19 78

CERTIFICATE OF MATERIAL. The undersigned Vendor certifies that to the date hereof Vendor has furnished machinery, material or fuel as set out herein to VENDEE:_____

_____ Deluth Construction Co. _____

for REAL ESTATE LOCATED AT _____ Hunters Ridge _____
_____ Gahanna, Ohio _____

that the nature of said machinery, material or fuel furnished, the date when Vendor commenced furnishing the same and the amount now due or owing therefor is correctly stated and set opposite Vendor's name below. If Vendor has been paid in full, it is acknowledged hereon.

| NAME, SIGNATURE AND ADDRESS OF VENDOR | Machinery, materials or fuel and nature of same | Date when commenced furnishing same, | Amount due or to become due |
|---|---|---|---|
| Reliance Universal | materials | 3/9/78 | $9,456.89 |
| Name of Vendor | | | Paid In Full |
| BY ✗ J.P. | | | above amount. |
| Signature and Title | | | JCM |
| 500 W. Whittier St. Columbus, Ohio 43215 | | | |
| Address | | | |

---

In lieu of a Certificate of Materialman, Vendor may furnish a written waiver of lien, a written release or proper receipt.

Merritt made the notation paid "above amount," thus reflecting the fact that *more* than $9,456.89 was due in order to constitute full payment. Secondly, based on finding of fact No. 29[3] of the trial court, a finding which, in our estimation, is supported by a preponderance of the reliable and probative evidence, we conclude that the Merritt notation on the certificate of materialman is of no legal consequence since Northland Park failed to demonstrate that it relied on this notation in advancing funds to Deluth Construction. Evidently, Northland Park personnel were unaware of the existence of this certificate of materialman until, in response to a discovery request, the document was unearthed from a Northland Park file cabinet.

As previously indicated, the focal point of the case *sub judice* is whether a property owner who does not specifically comply with the requirements of R. C. 1311.04[4] receives the

---

[3] The trial court's finding of fact No. 29 reads as follows:

"The Court finds the Certificate of Materialman as modified (Exhibit KK) insufficient to establish a right to rely thereon in order to create an estoppel and, in any event, further finds that Northland Park Homes, Inc. failed to prove that it actually relied on Exhibit KK in disbursing a draw to Deluth Construction Company."

[4] "Whenever any payment of money becomes due from the owner, part owner, or lessee, or whenever the original contractor desires to draw any money from the owner, part owner, or lessee, under their contract, or whenever any mortgagee makes a written demand, such contractor shall make out and give to the owner, part owner, lessee, or mortgagee, or his agent, a statement under oath, showing the name and address of every laborer in his employ who has not been paid in full and also showing the name and address of every subcontractor in his employ, and of every person furnishing machinery, material, or fuel, and giving the amount which is due or to become due to them, or any of them, for work done, or machinery, material, or fuel furnished to him, which statement shall be accompanied by a certificate signed by every person furnishing machinery, material, or fuel to him.***

"***

"In lieu of such certificate, there may be furnished a written waiver of lien, release, or receipt.

"The original contractor shall also deliver to such owner, part owner, lessee, or mortagagee similar sworn statements from each subcontractor, accompanied by like certificates from every person furnishing machinery, material, or fuel to such subcontractor. The owner, part owner, lessee, or his agent shall retain out of any money then due or to become due to the principal contractor, an amount sufficient to pay all demands that are due or to become due to such subcontractors, laborers, and materialmen, as shown by the contractors' and subcontractors' statements and the certificates of materialmen for work done or machinery, material, or fuel furnished, and shall pay said money to them according to their respective rights. All payments so

liability protection of R. C. 1311.05[5]. In resolving this question, we are mindful of Ohio's long-standing rule of statutory

made shall, as between such owner, part owner, lessee, or mortgagee, and such contractor, subcontractors, and persons performing labor or furnishing machinery, material, or fuel, be considered the same as if paid to such original contractor, and such owner, part owner, lessee, or mortgagee shall thereupon be released of any further liability to the extent of such payments so made.

"Until the statements are made and furnished in the manner and form provided for in this section, the contractor has no right of action or lien against the owner, part owner, or lessee, on account of such contract, and the subcontractor has no right of action or lien against the owner, part owner, lessee, or contractor, until he has furnished such statements, and any payments made by the owner, part owner, or lessee, before such statements are made or without retaining sufficient money, if that amount is due or it is to become due, to pay the subcontractors, laborers, or materialmen, as shown by the said statements and certificates, are illegal and made in violation of the rights of the persons intended to be benefitted by sections 1311.01 to 1311.24, inclusive, of the Revised Code, and the rights of such subcontractors, laborers, and materialmen to a lien, are not affected thereby.* * *

"In order that the owner, part owner, lessee, mortgagee, or contractor may be protected, he or his agent may at any time during the progress of the work, demand in writing of the contractor or any subcontractor any statements provided for in this section, which shall be made by the contractor or subcontractor, and given to the owner, part owner, lessee, mortgagee, contractor, or his agent, and if such contractor or subcontractor fails to furnish such statements within ten days after demand is made he is liable to such owner, part owner, lessee, mortgagee, or contractor making such demand, each time he refuses or neglects to comply with such demand, in the sum of one hundred dollars and also for all actual damages occasioned by such neglect or refusal. The omission or inaccuracy of any address required by this section shall not affect the validity of any affidavit or certificate provided for in this section."

[5] R. C. 1311.05 provides, in relevant part:

"Any person, furnishing machinery, material, or fuel, or performing labor of any kind, as provided in sections 1311.02 to 1311.04, inclusive, of the Revised Code, whose name has been omitted from the sworn statement or affidavit given by the contractor or subcontractor, may serve on the owner, part owner, or lessee of the premises, or his agent, a notice in writing, which notice shall be such as will inform the owner, part owner, or lessee of the premises or his agent, of the nature of the machinery, material, or fuel furnished, or to be furnished, or labor performed, or to be performed, the amount due or to become due therefor, and a description of the premises where furnished, with the street and number, if such owner, part owner, or lessee, resides in, or has a known agent in the county, in charge of such watercraft, or such house, mill, manufactory, furnace, building, appurtenance, fixture, bridge, structure, well, derrick, tank, or pipe line, or other construction or improvement described in sections 1311.02 and 1311.03 of the Revised Code.* * *

"Such notice is sufficient, if served at any time before final payment or distribution has been made in accordance with the statement under oath, as required by section 1311.04 of the Revised Code.

"* * *

construction that laws which limit the right of a lienholder to be paid in full for material furnished for an improvement to real property must be strictly construed. As this court ruled in *Howk* v. *Krotzer, supra,* paragraph four of the syllabus, "[a] statute which limits the right of a person who does work or labor upon or furnishes material for the construction of an improvement upon real estate to recover the full value of such labor or material is to be strictly construed." See, also, *Gebhart* v. *United States* (1961), 172 Ohio St. 200.

R. C. 1311.04 plainly requires an owner, prior to disbursing funds to a contractor, to secure (1) certificates of materialmen and (2) sworn statements from the contractor indicating, *inter alia,* the actual amount yet unpaid for material furnished by a supplier. As the trial court found, Northland Park failed to receive the requisite affidavit from Deluth Construction, thus depriving itself of the means of

---

"The owner, part owner, or lessee who makes payment or distribution according to respective rights in the manner and form provided in this section and section 1311.04 of the Revised Code, is not liable to the subcontractors, materialmen, or laborers for any greater amount than he contracted to pay the original contractor and he may set off any damages which he sustains by reason of any failure or omission in the performance of such contract, but the risk of all payments made to the original contractor after the owner, part owner, lessee, or his authorized agent has received the notice mentioned in this section, or before the contractor has furnished him with the statement under oath as provided in section 1311.04 of the Revised Code, is upon the owner, part owner, or lessee, until the expiration of sixty days within which claims for liens may be filed, as provided in section 1311.06 of the Revised Code, and no payment made to any contractor before the expiration of said sixty days, shall defeat any lien of any subcontractor, materialman, or laborer, unless such payment has been distributed among the subcontractors, materialmen, or laborers, or if distributed in part only, then to the extent of such distribution. Where the original contractor has furnished the statements and certificates as provided in this section and section 1311.04 of the Revised Code, the owner, part owner, or lessee, may pay to such contractor out of the sum due and payable to him under his contract at the time said statements and certificates are furnished, any amount in excess of the claims and demands due from said original contractor to subcontractors, materialmen, and laborers, as shown on said statements and certificates, or as shown by notices served on such owner, part owner, or lessee, by subcontractors, materialmen, and laborers as provided in this section.

"In making said payments the owner, part owner, or lessee may assume the names and amounts set forth in said statements and certificates to be true and correct and such owner is not liable for errors or omissions of said names and amounts in such statements and certificates, unless a notice has been served as provided in this section."

learning the actual amount due to Reliance by Deluth Construction for the pipe supplied by Reliance.

As R. C. 1311.04 unambiguously states, payments to a contractor made by a property owner, prior to receiving the sworn statements from the contractor, are illegal and made in violation of the rights of the laborers and materialmen, who are the intended beneficiaries of Ohio's mechanics' lien laws. See *Howk* v. *Krotzer, supra,* paragraph three of the syllabus, which reads: "The risk of all payments made to the original contractor before such contractor shall have furnished the owner with the statement under oath required by Sections 8312 and 8313, General Code, is upon the owner until the expiration of the sixty-day period in which claims for liens may be filed."

In light of the foregoing analysis, Reliance's failure to serve a notice under R. C. 1311.05 on Northland Park for any alleged errors in the certificate of materialmen becomes irrelevant. As this court unanimously ruled in *J. G. Laird Lumber Co.* v. *Teitelbaum* (1968), 14 Ohio St. 2d 115, 119: "On the other hand, the owner gets no protection from Sections 1311.04 and 1311.05, Revised Code, unless complete compliance is made with the formal requirements of these sections, since statutes which limit the right of a person furnishing labor or material for improvements upon real estate to recover the full value of such labor or material are to be strictly construed."

Therefore, we conclude that, since Northland Park did not completely comply with the requirements of R. C. 1311.04, in that it failed to secure the sworn statements from Deluth Construction, Northland Park cannot defeat Reliance's valid mechanics' lien by taking shelter in the immunity of R. C. 1311.05.

We summarily reject Northland Park's and United States Fidelity's cross-appeal that they are discharged from liability on the mechanics' lien because Reliance, despite having sufficient funds of Deluth Construction in its possession over a period of time, failed to apply this money to discharge Deluth Construction's debt. As the record suggests and as counsel represented in their brief and oral argument, Deluth Construction owed Reliance several debts other than the one pertaining

to the Northland Park project. Although it is true that Reliance did receive, over the course of time, money from Deluth Construction far in excess of Deluth Construction's debt to Reliance, Deluth Construction specifically earmarked only some of this money—far less than the total debt—for the Northland Park project.

In Ohio, it is beyond dispute that when a debtor owes a creditor several debts, the debtor, when making a payment to the creditor, has the right to direct its application accordingly. As this court ruled in *Stewart* v. *Hopkins* (1876), 30 Ohio St. 502, paragraph 13 of the syllabus, affirmed *sub nom.*, *Libby* v. *Hopkins* (1881), 104 U.S. 303: "Where a person owes another several distinct debts, he has the right to choose which debt he will pay first; and where, at the time of payment, he expressly directs what application is to be made of the payment, the creditor, if he retains the money, is bound to appropriate it as directed by the debtor." See, also, *Gaston* v. *Barney* (1860), 11 Ohio St. 506; 42 Ohio Jurisprudence 2d 294, Payment, Section 41. As such, a guarantor or surety has no right to control the application of the voluntary payments from Deluth Construction to Reliance and, under the facts at bar, is not discharged from liability. See, generally, Annotation 57 A.L.R. 2d 855.

For all the foregoing reasons, the judgment of the Court of Appeals is hereby reversed and the trial court's judgment of $41,556.72 in favor of Reliance is reinstated.

*Judgment reversed.*

W. BROWN, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.