TAKACH ET AL., APPELLEES, *v.* WILLIAMS HOMES, INC. ET AL.; CARDINAL FEDERAL SAVINGS & LOAN ASSN., APPELLANT.

[Cite as Takach *v.* Williams Homes, Inc. (1983), 6 Ohio St. 3d 357.]

(No. 82-1399—Decided August 31, 1983.)

Messrs. Benesch, Friedlander, Coplan & Aronoff, Mr. Edward Kancler and Mr. Kenneth A. Bravo, for appellees.

Messrs. Parks, Eisele, Bates & Wilsman, Mr. Ebert Weidner and Mr. John A. Hallbauer, for appellant.

REILLY, J. Appellant presents this court with the following proposition of law.

"Revised Code § 1311.011 does not require a construction lender to protect the interests of a non-borrower while disbursing a borrower's loan funds."

Two loan contracts were made in this case. Appellant made a commitment to appellees for a purchase money mortgage plan and also a construction loan to Williams Homes. There is no dispute that appellant properly disbursed the mortgage loan funds. Similarly, there is no question that appellant improperly disbursed the construction loan funds, since it did not comply with the mandatory statutory duty under R.C. 1311.011 (B)(4) to obtain affidavits from Williams Homes for protection against mechanics' liens prior to the disbursement of funds to the contractor. Appellant's duties in relation to the contractor's loan are at issue. The question presented is whether pursuant to R.C. 1311.011 a lender, when disbursing the contractor-borrower's funds, has a duty to protect the interests of appellees, based upon the lender's commitment of a mortgage for the subject home.

R.C. 1311.011 (B)(4) specifies the duty of lending institutions concerning such affidavits as follows:

"No lending institution shall make any payment to any original contractor until the original contractor has given the lending institution his affidavit stating:

"(a) That the original contractor has paid in full for all work performed and for all labor, materials, machinery, or fuel furnished by the original contractor and all subcontractors, materialmen, and laborers prior to the date of the closing of the purchase or during and prior to the payment period, except

such unpaid claims as the original contractor shall specifically set forth and identify both by claimant and by amount claimed;

"(b) That no claims exist other than those claims so set forth and identified in the affidavit required by division (B)(4) of this section."

Therefore, considering the foregoing statute, appellant has a duty to appellees, pursuant to the construction loan agreement with Williams Homes, because R.C. 1311.011 (B)(4) requires a lending institution not to make "any" payments to the contractor until the contractor has given the lending institution the required affidavits. The General Assembly, by the use of the word "any" in the statute, does not distinguish between payments on the purchase and mortgage loans. Thus, pursuant to the statute, the lending institution has a duty to appellees regardless of whether the funds are disbursed to the contractor under either the mortgage or construction loan agreement. This duty is statutory and under the provisions of the statute is not owed solely to the contracting parties. The duty is owed to one, having a loan commitment from the same lending institution for the subject home, who may be damaged by a wrongful disbursement.

The determination of this case rests upon a consideration of R.C. 1311.011 (B)(4) in conjunction with R.C. 1311.011 (A)(3), the latter of which reads as follows:

" 'Lending institution' means any person that enters into a contract with the owner, part owner, purchaser, or lessee to provide financing for a home construction contract or a home purchase contract, which financing is secured, in whole or in part, by a mortgage on the real estate upon which the improvements contemplated by the home construction contract are to be made or upon the property that is the subject of the home purchase contract, and that makes direct disbursements under the contract to any original contractor or the owner, part owner, purchaser, or lessee."

There are two contracts involved, a purchase loan and a construction contract. R.C. 1311.011 (B)(4) refers to any disbursements to any original contractor and does not distinguish between contracts. Consequently, the statutory duty not to make disbursements without obtaining affidavits is to anyone who could be injured by a failure to comply with the statute. The disbursements in this case were made pursuant to the construction loan agreement to which appellees were not a party. It is reasonable to assume that lending institutions do not function in a vacuum. It is apparent that the lending institution had at least constructive knowledge of appellees' purchase loan.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and HOFFMAN, JJ., concur.

W. Brown, J., dissents.

Reilly, J., of the Tenth Appellate District, sitting for Locher, J.

Hoffman, J., of the Fifth Appellate District, sitting for J. P. Celebrezze, J.

William B. Brown, J., dissenting. Because I believe that the lender's duty under R.C. 1311.011 (B)(4) relates solely to transactions in which the lender pays the contractor-builder with funds borrowed by the homeowner or home purchaser, or pays the funds to the homeowner or home purchaser himself, I must respectfully dissent.

R.C. 1311.011 is the homeowner's amendment to the mechanics' lien statute. Its purpose is to protect home purchasers from paying the contract price for their homes and then having to contend with mechanics' liens which remain on their property. Appellees argue, and the majority so holds, that this statute places an affirmative duty on a lending institution to protect the interests of home purchasers and prohibits lenders from making any payments to contractors prior to receiving a required affidavit. In reaching this conclusion the majority relies on R.C. 1311.011 (B)(4) which reads as follows:

"No lending institution shall make any payment to any original contractor until the original contractor has given the lending institution his affidavit stating:

"(a) That the original contractor has paid in full for all work performed * * * by * * * all subcontractors, materialmen, and laborers prior to the date of the closing of the purchase * * * except such unpaid claims as the original contractor shall specifically set forth and identify both by claimant and by amount claimed;

"(b) That no claims exist other than those claims so set forth and identified in the affidavit * * *."

However, the majority's interpretation would impose liability upon a lender for mechanics' liens on property despite the fact that the purchaser has no obligation to pay those debts and no need to suffer any resulting liens on the property. This result could not have been what the General Assembly intended when it enacted this statutory provision.

In the first place, R.C. 1311.011 (B)(4) applies only to "lending institutions" which are defined in R.C. 1311.011 (A)(3) as: "* * * [A]ny person that *enters into a contract with the* owner, part owner, *purchaser,* or lessee to provide financing for a home construction contract or a home purchase contract * * * *and that makes direct disbursements under the contract to any original contractor.*" (Emphasis added.) In the present case, the bank was not a lending institution for purposes of R.C. 1311.011. The contract to provide construction financing was between the lender and the contractor and did not mention appellees at all. There was a separate contract for the bank to pro-

vide a purchase money mortgage loan to appellees but it appears this loan was not for home construction and thus does not fit the definition. In addition, it is undisputed that these latter funds were properly paid. The funds under this second contract were to be used to purchase the home after construction was completed.

R.C. 1311.011 (B)(4) mandates that the lender has a duty to the borrower in certain circumstances to protect his interests by withholding payment of the borrower's funds until the contractor-builder demonstrates by affidavit that all subcontractors and materialmen have been paid. Those circumstances exist when the lender is disbursing the borrower's funds to the borrower himself or to a builder-contractor on the borrower's behalf. The facts of the case at hand demonstrate that those circumstances are not present. R.C. 1311.011 does not require a lender to protect the interests of a non-borrower while dispensing a borrower's loan funds. While the lender may choose to safeguard against mechanics' liens in order to protect its own security interests in the property, it has no statutory duty to do so on behalf of a stranger to that transaction. In the present case, none of the funds paid by the lender were supplied by or on behalf of appellees. Instead they were paid from the builder's line of credit.

In the second place, even if appellant did owe a duty, appellees suffered no damage as a result of the manner in which the construction funds were disbursed but were themselves the cause of any loss sustained. Part of the purpose of the statute is to force mechanics' lienors to obtain payment from the contractor-builder rather than the home purchaser who has already paid the builder for those goods and services. The statute provides complete protection to purchasers by establishing procedures whereby the home purchaser may limit all known perfected liens to the unpaid balance of the contract price, R.C. 1311.011 (B)(2), and to eliminate completely all liens for which the purchaser did not obtain actual notice by receiving a copy of the lien affidavit before making payment to the builder of the full contract price. R.C. 1311.011 (B)(1) and (3).

R.C. 1311.011 (B)(1) deals with protecting purchasers against liens which might otherwise be perfected after the closing. "No subcontractor, materialman, or laborer has a lien to secure payment for work done * * * if the owner * * * paid the original contractor in full or if the purchaser has paid in full for the amount of the home construction or home purchase contract price, and the payment was made prior to the owner's * * * receipt of a copy of an affidavit of mechanic's lien * * *." In other words, if appellees in the present case had closed on the house and paid the contractor the full contract price before receiving notice of any mechanics' liens, those mechanics' liens could not have attached to the property.

Subdivision (B)(2) protects the purchaser against liens which are perfected before he has paid the full contract price. "If the original contractor has not been paid in full * * * no subcontractor, materialman, or laborer has a lien to secure payment for work done * * * for an amount greater than

the amount due under the home construction contract that has not been paid to the original contractor * * * or for an amount greater than the amount of the home purchase contract price that has not been paid to the original contractor. The total amount of all liens * * * that may be enforced in lien foreclosure proceedings shall not exceed the amount due under the home construction contract that has not been paid to the original contractor or the amount due under the home purchase contract that has not been paid to the original contractor." Mechanics' liens claimants are entitled only to share pro rata in the unpaid balance of the contract price.

In the present case, if appellees had knowledge of the existence of mechanics' liens prior to closing and paying the balance of the contract price, appellees could simply have paid the mechanics' lienors on a pro rata basis up to the unpaid amount of the contract price and avoided the controversy. The existence of these provisions demonstrates that the lender's making payments, without receiving affidavits, did not impair appellees' new statutory rights to limit all known perfected liens or all liens after the contract price was paid. Appellees had complete protection against double payment.

In conclusion, appellees did not pursue the remedies available to them under the statute. Thus, even if R.C. 1311.011 created a duty on the part of the lender to appellees, a breach of that duty would not have been the cause of appellees' losses. However, I would conclude that in the circumstances of the present case the statute imposed no duty upon appellant to protect appellees' interests. Similarly, I find no authority which would require imposition of a common-law duty by the lender to a non-borrower in these circumstances.

For the foregoing reasons, I would reverse the judgment of the court of appeals.