BLANCHESTER LUMBER AND SUPPLY, INC., APPELLANT, *v.* CARDINAL STATE BANK, APPELLEE.

26

(No. CA88-05-047—Decided November 14, 1988.)

*Clark & Mengle* and *John S. Mengle,* for appellant.

*Huddleson & Lane Co., L.P.A.,* and *William Huddleson,* for appellee.

*Per Curiam.* This is an appeal by plaintiff-appellant, Blanchester Lumber and Supply, Inc., from the Warren County Court of Common Pleas' decision to award defendant-appellee, Cardinal State Bank, summary judgment on appellant's complaint.

On April 22, 1986, appellee entered into a construction loan with Jorge Seuc and Linda Seuc whereby the Seucs were extended a loan to construct a residence on lot No. 62, Whistling Wind Drive, Milford, Ohio, and appellee received a mortgage on the property. The Seucs, in turn, made an agreement with Betty Bratton of B & F Builders to construct a residence on lot No. 62.

Construction of the residence began and the first draw on the construction loan (in the amount of $25,448.06) took place on July 19, 1986.

On July 28, 1986, appellant sent appellee the following letter, which appellee received the next day:

"Please be advised that we, the Blanchester Lumber Co., Inc., have been furnishing material for [*sic*] building under construction by B & F Construction, Betty Biatten [*sic*], builder, since June 23, 1986. The building under construction is located at Lot #62 Whistling Wind Drive, Milford, Ohio, the owners being Jorge L. and Emma Seuc, of 10490 Storybook Dr., Cincinnati, Ohio 45242."

Despite this letter, appellee, on September 12, 1986, relied upon B & F Builder's original contractor's affidavit, which neither identified nor accounted for appellant's materialman's claim, and paid a $28,000 second draw to B & F Builders and nine other subcontractors or materialmen.[1]

On April 21, 1987, appellant filed a

---

[1] According to a March 23, 1988 affidavit from appellee's vice president, Peter Bergman, $22,534.92 was still in the bank's hands awaiting distribution.

complaint alleging appellee owed it $13,000 which it had failed to pay during the second draw in spite of appellant's July 28, 1986 letter notifying appellee of its materialman's status. However, appellant's action was abruptly terminated when the common pleas court, on May 20, 1988, granted appellee's motion for summary judgment, finding that appellant's July 28, 1986 letter was not a written notice of a claim of a right to a mechanic's lien as required by R.C. 1311.011(B)(5) because it did not comply with R.C. 1311.05 by stating an amount claimed to be owed, and that the duties R.C. 1311.011(B) imposes on lending institutions inure solely to the benefit of those having a proprietary interest in the subject property.

In its brief before this court, appellant claims the common pleas court erred in granting appellee's motion for summary judgment. In support of that claim, appellant makes three arguments. They are: (1) the protection of R.C. 1311.011(B)(5)[2] extends to materialmen like appellant; (2) the notice sent by appellant to appellee was sufficient to meet R.C. 1311.011 (B)(5); and (3) even if the notice sent to appellee was inadequate under R.C. 1311.011(B)(5), genuine questions of material fact remain.

As appellee concedes, appellant's first argument has merit due to the Ohio Supreme Court's decision in

*Thompson Electric, Inc.* v. *Bank One, Akron, N.A.* (1988), 37 Ohio St. 3d 259, 525 N.E. 2d 761. There, in paragraph one of the syllabus, the Supreme Court held a materialman *is* an appropriate party to assert a cause of action against a lending institution for violation of R.C. 1311.011.

In light of *Thompson Electric, supra,* the trial court's second basis for awarding appellee summary judgment was erroneous.

We are also persuaded appellant's second argument (*i.e.,* that the July 28, 1986 letter was sufficient notice to satisfy R.C. 1311.011[B][5]) has merit. An examination of the statutory scheme set forth in R.C. 1311.011(B) reveals it is intended to take away some protection formerly provided subcontractors and materialmen by the mechanic's lien statute and to substitute in its place a new means of assuring the payment of subcontractors and materialmen separate and apart from the remaining mechanic's lien statutes. R.C. 1311.011(B)(4) provides that in order for an original contractor to receive a draw, the contractor is required to file an affidavit with the lending institution stating it has paid in full for all work it performed or materials it furnished, as well as all of its subcontractors, its materialmen, and its laborers to the date of the affidavit, and, if it has not paid all such claims in full, to account for any unpaid

---

[2] R.C. 1311.011(B)(5), the crucial statute in issue here, provides:

"When making any payment under the home construction contract or on behalf of the owner or part owner under a home purchase contract, the lending institution may accept the affidavit of the original contractor required by division (B)(4) of this section and act in reliance upon it, unless it appears to be fraudulent on its face. The lending institution shall not be financially liable to the owner, part owner, purchaser, lessee, or

any other person for any payments, except for gross negligence or fraud committed by the lending institution in making any payment to the original contractor.

"After receipt of a written notice of a claim of a right to a mechanic's lien by a lending institution, failure of the lending institution to obtain a lien release from the subcontractor, materialman, or laborer who serves notice of such claim is prima-facie evidence of gross negligence."

claims both by claimant and amount. R.C. 1311.011(B)(4)(b) then goes on to require the original contractor to aver that this affidavit accounts for all claims which exist on this particular project to the date of the affidavit.

R.C. 1311.011(B)(5) builds upon R.C. 1311.011(B)(4)(a) and (b) by allowing a lending institution to accept and rely upon the original contractor's affidavit in paying a particular draw *unless* the affidavit appears to be fraudulent, and it affords the lending institution insulation from liability to anyone, see *Thompson Electric, supra,* except for that institution's gross negligence or fraud in making payment in accordance with the original contractor's affidavit.

*Thompson Electric, supra,* at 265, 525 N.E. 2d at 768, and *Plumbing Connections, Inc.* v. *Kostelnik* (C.P. 1980), 69 Ohio Misc. 11, 23 O.O. 3d 77, 430 N.E. 2d 1340, hold that the second paragraph of R.C. 1311.011(B)(5)[3] provides only an example of (and not the sole means of establishing) a lending institution's gross negligence in relying upon an original contractor's affidavit. Reading R.C. 1311.011(B)(4) and (5) *in pari materia,* we are persuaded they are intended to insulate a lending institution against further liability for claims when it relies on what it reasonably believes to be a complete and truthful disclosure of the original contractor's expenses in an R.C. 1311.011(B) affidavit. However, a lending institution's immunity from liability, as provided by R.C. 1311.011(B)(5), is lost when the lending institution receives notice of a subcontractor, materialman, or laborer's claim that is not accounted for in an original contractor's affidavit but nevertheless proceeds to pay the original contractor according to its now facially incomplete (in view of R.C. 1311.011[B][4][b])[4] affidavit without first obtaining a release from the notifying subcontractor, materialman, or laborer.

Applying R.C. 1311.011(B)(4) and (5) to this case, we conclude appellee was entitled to rely upon and pay in accordance with B & F Builders' R.C. 1311.011(B)(4) affidavit and be insulated from further liability to appellant so long as it was not notified of appellant's claim which B & F Builders' R.C. 1311.011(B) (4) affidavit did not include. However, once appellee was made aware of the existence of appellant's claim, appellee, based upon R.C. 1311.011(B)(4)(b), was not entitled to rely upon and pay in accordance with B & F Builders' affidavit which did not account for that claim unless and until it obtained a release from appellant.

In conclusion, we hold the notice contemplated by R.C. 1311.011(B)(5) need not comply with R.C. 1311.05 by setting forth a specific amount claimed to be due, because the purpose of an R.C. 1311.011(B)(5) notice is to inform the lending institution that it has a duty to examine the original contractor's R.C. 1311.011(B)(4) affidavit, *Takach* v. *Williams Homes, Inc.* (1983), 6 Ohio St. 3d 357, 6 OBR 411, 453 N.E. 2d 656, to see that the notifying party's claim is accounted for therein, and, if not, to obtain a release from the notifying party before paying the original contractor in accordance

---

[3] See fn. 2, *infra.*

[4] R.C. 1311.011(B)(4)(b) provides:

"(4) No lending institution shall make any payment to any original contractor until the original contractor has given the lending institution his affidavit stating:

"(* * *

"(b) That no claims exist other than those claims so set forth and identified in the affidavit required by division (B)(4) of this section."

with its affidavit. To hold otherwise would defeat the purpose of the statute by permitting a lending institution to rely upon an original contractor's R.C. 1311.011(B)(4) affidavit when it knows that affidavit's R.C. 1311.011(B)(4)(b) averment (*i.e.*, that no other claim exists except those contained in this affidavit) is false.

Because the common pleas court's decision allowed appellee to ignore the notice it received from appellant in paying B & F Builders' second draw in accordance with its incomplete affidavit, we find appellant's first and second arguments and its sole assignment of error to have merit. We therefore reverse the court's summary judgment decision and remand this case to that court for further proceedings.

*Judgment reversed and cause remanded.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.